UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JACQUELINE GIEBELL,

    Plaintiff, : Case No. 2:20-cv-3655

  -vs-                               Judge Sarah D. Morrison
                                       Magistrate Judge Kimberly A. Jolson

HEARTLAND DUBLIN NURSING
FACILITY
                                  :

    Defendant.

## OPINION AND ORDER

This matter is before the Court upon Defendant Heartland Dublin Nursing Facility's Motion to Dismiss the Complaint (ECF No. 5) and Plaintiff Jacqueline Giebell's Memorandum in Opposition (ECF No. 7). For the reasons that follow, the Court **GRANTS** Defendant's Motion.

### I.    FACTUAL ALLEGATIONS

The following are the factual allegations the Court is able to discern from the Complaint.

Jacqueline Giebell, a resident of Virginia, is the former caregiver and friend of Shiskin Wu.[1] (Compl., p. 5, ECF No. 1.) Ms. Giebell alleges that while she was taking care of Mr. Wu in Virginia, she reported to her boss Jen Wu that there were "marks" on Mr. Wu. (*Id.*) Approximately five weeks later, Mr. Wu was moved to

---

[1] Ms. Giebell refers to multiple people with the surname "Wu." To limit confusion, hereafter the Court will refer to Shiskin Wu as "Mr. Wu" and reference his family members by their full names.

1

Defendant Heartland Dublin Nursing Facility/HCR Manor Care ("Heartland), an Ohio corporation with its principal place of business in Ohio. (Motion, 3, ECF No. 5.)

According to Ms. Giebell, when she visited Mr. Wu in January 2018, she observed marks on him that were identical to the marks she observed in Virginia. (Compl., p. 5.) She did not report the marks to anyone at that time but observed additional marks on Mr. Wu during her visits in May, July, and August. (*Id.*)

Ms. Giebell alleges that on June 15, 2018, Mr. Wu's power of attorney, Keui Wu, attempted to prevent Ms. Giebell from continuing to visit Mr. Wu, but Heartland intervened. (*Id.*) At the same time, Ms. Giebell reported her "observation of abuse" to a Heartland administrator, Cody Brown. (*Id.*) Ms. Giebell believes that Mr. Wu was being abused by a family member. (*Id.*) Ms. Giebell continued to file complaints of abuse of Mr. Wu with Heartland, including with Mr. Brown's supervisor, Jason Holefelder, and the Ohio Department of Health. (*Id.*) According to Ms. Giebell, Mr. Holefelder performed an evaluation of Mr. Wu and determined the marks to be "skin discolorations." *(Id.)* Ms. Giebell disagrees with this assessment. (*Id.*)

On August 2, 2018, Ms. Giebell called the Dublin Police Department after being unable to reach Mr. Wu while his family was visiting. (*Id.*) During that call, Ms. Giebell discovered that "there was another report involving [Mr. Wu]." (*Id.*) Ms. Giebell requested that "Sgt. Krayer"[2] reopen the case but he instead suggested that

---

[2] Ms. Giebell refers only to the title and last name of the police officers she references in the Complaint.

2

Mr. Giebell document the abuse in Virginia and make a report in that jurisdiction. (*Id.* at 6.) Ms. Giebell attempted to do so but was denied. (*Id.*) Nevertheless, Sgt. Krayer allowed Ms. Giebell to document the abuse in Virginia. (*Id.*)

On August 6, "Officer Jones" was sent out to photograph the complained of marks on Mr. Wu. (*Id.*) As a result, Keui Wu made a "telecommunications complaint" to the Dublin Police. (*Id.*) "Officer Traves" then warned Ms. Giebell not to contact Mr. Wu or she would be charged with harassment. (*Id.*) He also informed her that Mr. Wu's family had taken his cellphone. (*Id.*) Ms. Giebell then proceeded to file an incident report about her conversation with Officer Traves. (*Id.*) She also talked to "Sgt. Rice" who was "very hateful and threatened" her. (*Id.*)

Mr. Holefelder allowed Ms. Giebell to visit Mr. Wu on August 18. (*Id.* at 7.) Ms. Giebell told Mr. Holefelder that the police had restricted her telephone access to Mr. Wu. (*Id.*) She alleges that eventually the Dublin Police dismissed the warning of Officer Traves because "the legal dept. of the police had sided with [her and] because [Mr. Wu] was competent." (*Id.*)

On August 22, Mr. Wu fell and was taken to the hospital. (*Id.*) Mr. Wu was then "mysteriously put back on hospice on sept. 2nd, even though he had handled being on hospice fine from 8/5 until he fell, he somehow started dying the next day on 9/3, and continued dying until close to midnight on 9/4." (*Id.*) Ms. Giebell believes that Mr. Wu was signed into hospice as "retaliation and to 'dispose' of him. And to rid themselves of the abuse scandal." (*Id.* at 8.) She also alleges that it was Heartland's intention to declare Mr. Wu incompetent even though he was

3

competent. (*Id.*)

On July 20, 2020, Plaintiff filed a pro se Complaint alleging negligence per se, gross negligence, malice, obstruction of criminal investigations, and retaliation against a witness. She requests $200,000 in punitive damages and that "a case be reopened on Mr. Shiskin Wu." (*Id.* at 10.) The Court has diversity subject matter jurisdiction to hear this case pursuant to 28 U.S.C. § 1332.

On August 19, 2020, Heartland filed a motion to dismiss for failure to state a claim upon which relief may be granted. (ECF No. 5.) Ms. Giebell responded on August 31. (ECF No. 7.) This matter is now ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations

4

omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

These standards apply equally when the plaintiff is pro se. Although a pro se litigant is entitled to a liberal construction of her pleadings and filings, she still must do more than assert bare legal conclusions, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

### III. ANALYSIS

#### A. Tort Claims

Ms. Giebell alleges state law claims for negligence per se based on Heartland's alleged violation of the Federal Nursing Home Reform Act, 42 U.S.C. § 1395i-3, gross negligence, and malice. The injury she complains of is the alleged abuse and subsequent death of Mr. Wu. It is apparent in both her Complaint and Memorandum in Opposition that she is bringing these claims in her own name but attempting to represent Mr. Wu's interests. (Compl., p. 5; Memo. Opp., 14, ECF No. 7.) She believes that her "sponsor status" allows her to act on his behalf. She is wrong.

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). "One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.* (internal quotations omitted). "[W]hen a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to [herself] that is likely to be redressed by a favorable decision." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976). "Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Id.* Here, Ms. Giebell does not allege any injury to herself, she complains only of injury to Mr. Wu.

While 28 U.S.C. § 1654 "permit[s] individual parties to plead and conduct their own cases personally or by counsel, [it] does not authorize a non-attorney to bring suit on behalf of a third person." *Huntsman v. Sumner Cty. Jail*, No. 3:19-cv-1088, 2020 WL 1061886, at *2 (M.D. Tenn. Mar. 5, 2020) (internal quotations omitted). Section 1654 "does not permit plaintiffs to appear pro se where interests other than their own are at stake." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (emphasis omitted). Pro se plaintiffs typically do not have standing to advance pro se claims on behalf of family members, let alone a friend or professional client. *Id.* Additionally, the definition of "sponsor" under Ohio Rev. Code. 3721.10(D) does not confer standing on a pro se litigant to bring tort claims on another's behalf.

Accordingly, Ms. Giebell lacks standing to bring these state law claims and

6

they must be **DISMISSED**.

### B. Criminal Violations

Ms. Giebell also alleges violations of federal criminal statutes 18 U.S.C. § 1510 (obstruction of criminal investigations) and 18 U.S.C. § 1513 (retaliating against a witness, victim, or an informant) based on her own interactions with Heartland. Ms. Giebell possesses no private right of action against Heartland for alleged violations of federal criminal statutes. *Kafele v. Frank & Wooldridge Co.*, 108 F'Appx 307, 308 (6th Cir. 2004). Further, as a private citizen, Ms. Giebell lacks authority to initiate a federal criminal prosecution of Heartland for its alleged unlawful acts. *Id.* at 308–09. These claims also fail and must be **DISMISSED**.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion is **GRANTED**. (ECF No. 5.) As demonstrated by the Court's discussion above, allowing Plaintiff leave to amend her claims or refile her Complaint would be futile. *SFS Check, LLC v. First Bank of Delaware,* 774 F.3d 351, 355 (6th Cir. 2014). Accordingly, the Complaint is **DISMISSED** with prejudice. (ECF No. 1.)

The Clerk is **DIRECTED** to **TERMINATE** this case from the docket of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
SARAH D. MORRISON
UNITED STATES DISTRICT JUDGE